MARINE TRUST COMPANY OF BUFFALO, on Its Own Behalf and on Behalf of All Other Creditors of BUFFALO MANUFACTURING COMPANY Similarly Situated, Plaintiff, *v.* FRANK TRALLES and Others, Individually and as Directors of BUFFALO MANUFACTURING COMPANY, and as Trustees Thereof in Dissolution, Defendants.

Supreme Court, Erie County, April 26, 1933.

*Palmer, Houck & Wickser* [*D. W. Haring* and *William Palmer* of counsel], for the plaintiff.

*Flynn, Tillou, Phillips & Ward* [*George W. Davis* of counsel], for the defendants.

HARRIS, J.   This is an action brought by the plaintiff on its own behalf and on behalf of other creditors of the Buffalo Manu-

facturing Company, a domestic stock corporation (dissolved by a voluntary proceeding pursuant to section 105 of the Stock Corporation Law) and the relief sought is a decree holding that the defendants herein on such dissolution received certain funds of such corporation and that they are holding the same as trustees, and requiring them to account for such funds for the benefit of the said creditors.

The Buffalo Manufacturing Company was a domestic stock corporation which began business on its formation in 1898. The industry in which the company was engaged was that of manufacturing metalware.

On August 1, 1928, the Buffalo Manufacturing Company executed and delivered its bond to the Marine Trust Company, for the sum of $25,000, which bond was secured by a mortgage on the real property of the corporation at Buffalo, N. Y. This indebtedness to the plaintiff became due and payable August 1, 1929, and on the refusal of the Buffalo Manufacturing Company to pay the same, the mortgage was foreclosed in an action instituted by the filing of a *lis pendens* August 11, 1931. The real property at sale did not bring an amount sufficient to pay the indebtedness and on May 27, 1932, a deficiency judgment was entered against the corporation for the sum of $23,364.53. Execution was returned unsatisfied and the said judgment remains wholly unpaid.

So far as appears in this action, the only outstanding indebtedness of the corporation at the time of its dissolution (in addition to the claims of the defendants Kogler, Tralles and Mast herein, as hereinafter described) was the indebtedness on the bond and mortgage above referred to.

During the later years of the life of the corporation, the defendants Tralles, Kogler and Mast and Bullet were directors of the corporation and at all times up to August 13, 1931, the defendants Tralles, Kogler and Mast, in addition to being directors of the corporation, were actively engaged in manual labor about the plant of the corporation. Up to about the summer of 1929 each of these three men was receiving compensation at the rate of forty dollars a week for such manual labor. The defendant Kogler worked in the electric plating department, the defendant Tralles worked as a metal spinner and the defendant Mast worked as a spinner and crated and packed goods. During that summer it was decided that the corporation should, at some time in the more or less near future, wind up its business. This decision was due to lack of trade. These three defendants also agreed, evidently with each other and without the formality of a meeting of stockholders or of directors, that from that time on until the business

was finally disposed of, each one should draw twenty-six dollars and sixty-seven cents each week to apply on his forty dollars a week, but that the compensation of each for wages should still continue at forty dollars per week. For about a year thereafter these three defendants all worked at their usual occupations in the plant.

Toward the fall of 1930 these men again agreed, without any action of the board of directors or of the stockholders, that during the remainder of the time necessary to close up the affairs of the Buffalo Manufacturing Company each one would draw one dollar a week to apply upon the forty dollars a week. Their idea was to complete unfinished work and to market the same and then to be paid the remaining amount of their wages from the proceeds of such marketing. In this manner, at the time the bond and mortgage became due, there was owing to each one of the defendants Kogler, Tralles and Mast approximately $3,500. This debt was entirely for their services in labor as above described, to wit, polishing, spinning, crating and packing about the plant and in the employ of the Buffalo Manufacturing Company.

Prior to the foreclosure of the mortgage above described and on or about July 1, 1931, the defendants Tralles and Mast informed the Marine Trust Company that the Buffalo Manufacturing Company would be unable to pay the bond and mortgage.

During the period from the summer of 1929 to July 28, 1931, there accumulated in the bank account of the Buffalo Manufacturing Company kept at the Marine Trust Company of Buffalo, $6,720.40, this representing the amount of receipts from time to time for the marketing of goods by the Buffalo Manufacturing Company. On July 28, 1931, the Buffalo Manufacturing Company drew this amount from the Marine Trust Company and deposited the same in the Liberty Bank of Buffalo on the same day as it was withdrawn from the Marine Trust Company. On August 13, 1931, the amount of $6,720.40 was withdrawn by the check of the Buffalo Manufacturing Company from the Liberty Bank of Buffalo. Five hundred dollars of this amount was paid to the late Hamilton Ward, Esq., for legal counsel to the Buffalo Manufacturing Company. No question is raised as to the propriety of this payment. The remaining sum of $6,220.40 was divided into three equal parts and one of such equal parts was taken by the defendant Tralles, the second by the defendant Kogler and the third by the defendant Mast. Each of these men claims that he received this money in part payment of wages which had accumulated in the manner above described, and the court is satisfied that this is the truth. All of this took place without any action or resolution of the stock-

holders or of the directors in formal meeting and there is no doubt that there was no formal meeting of either stockholders or directors for many years before the dissolution of the company.

Some time after these moneys were so disbursed, the defendant Bullet, who had been a stockholder in the corporation, and representatives of one Mr. Volk who had been a stockholder and who had died in 1927, in some way became informed of the fact that the defendants Kogler, Tralles and Mast had withdrawn the funds. Evidently the defendant Bullet and the representatives of Mr. Volk felt that they were entitled to some return on the stock investments made by the defendant Bullet and Mr. Volk, and threatened litigation. As a result of their inquiry, the defendants Kogler, Tralles and Mast each contributed enough money from what each one had drawn from the fund above mentioned to make some compensation to the defendant Bullet and to the representatives of the late Mr. Volk for their stock investments. The court is asked by the plaintiff to find that this really was a division of the entire fund to stockholders in preference to creditors, but the court is of the opinion that the original distribution of the money among the three defendants mentioned was honestly a payment of wages and that the latter payment to defendant Bullet and the representatives of the late Mr. Volk was a voluntary payment, without necessity of law, to avoid litigation.

It is undoubtedly the law that on the dissolution of the corporation the defendants became trustees for the benefit of creditors of the corporation. (Gen. Corp. Law, § 29; Stock Corp. Law, § 105.) Section 15 of the Stock Corporation Law, so far as it is pertinent to this action, provides as follows: "No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers, or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash." And such section further provides: "No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, * * * *except also that laborers' wages for services shall be preferred claims and be entitled to payment before any other creditors out of the corporation assets in excess of valid prior liens or incumbrances.*"

Upon the construction of this sentence depends the question as to whether or not the defendants should account for the moneys received by them from the said sum of $6,220.40 for the benefit of the other creditors of the Buffalo Manufacturing Company. Although a portion of section 15 first above quoted forbids any transfer to an officer, director or stockholder for the payment of any debt, this apparently means payment to an officer, director or stockholder in such capacity. The portion second above quoted leads this court to the conclusion that if the payment is made to an individual who is an officer, director or stockholder, but is paid to him as a wage-earner of the corporation, then it is not within the prohibition because there is no reason why an officer, director or stockholder who is a wage-earner should not have the same preference as any other wage-earner of a corporation. The court is, therefore, of the opinion that the amounts paid and received by the defendants Kogler, Tralles and Mast (including those afterwards paid over to the defendant Bullet and representatives of Mr. Volk) being a payment to wage-earners would be a preferred indebtedness on the part of the defendants Kogler, Tralles and Mast against a corporation and its payment would come prior to any amount owing creditors who were not preferred. There can be no doubt that the claim of the plaintiff herein was not a preferred indebtedness.

To support its claim counsel for the plaintiff cites the case of *Feigenbaum* v. *Narragansett Stables Co., Inc.* (127 Misc. 114; affd., without opinion, 219 App. Div. 729; affd., 245 N. Y. 628). The case at bar is to be distinguished from the case so cited. In the action of *Feigenbaum* v. *Narragansett Stables Co., Inc.* (*supra*) the payments made were to officers who took money as officers for alleged unpaid salaries; the payments made to the defendants Kogler, Tralles and Mast were wages paid to wage-earners.

So long as the court has determined that these payments were made to the defendants Kogler, Tralles and Mast as preferred creditors, and were sufficient to use up the entire sum for which accounting is asked, the defendants herein have satisfactorily accounted for such assets of the Buffalo Manufacturing Company, and there being no further assets, the complaint herein is to be dismissed.